IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAKASHI FURUTA, | CIVIL NO. 19-00617 JAO-KJM |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| HAWAIIAN AIRLINES INC., A FOREIGN PROFIT CORPORATION; AND DOES 1–50, | |
| Defendants. | |

**ORDER DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Takashi Furuta ("Plaintiff) sues Defendant Hawaiian Airlines, Inc.

("Defendant") for injuries he suffered as a passenger on a flight from Osaka, Japan

to Honolulu, Hawai'i, claiming that Defendant was negligent in failing to avoid the

turbulence that caused his injuries.  *See* ECF No. 1 at 5–6.  Plaintiff maintains this

action pursuant to the Convention for the Unification of Certain Rules for

International Carriage by Air ("Montreal Convention"), which "provides the

exclusive remedy for international passengers seeking damages against airline

carriers." *Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014); *see also* Montreal Convention arts. 17, 20, and 21, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309, 1999 WL 33292734, at *16–19, https://treaties.un.org/doc/Publication/UNTS/Volume%202242/v2242.pdf (last visited Aug. 24, 2022).

Defendant now moves for summary judgment on Plaintiff's claims. *See* ECF No. 79 ("Motion"). As an alternative to summary judgment on Plaintiff's claims, Defendant seeks partial summary judgment limiting its liability. *See* ECF No. 79-2 at 27–32.

For the following reasons, the Court DENIES Defendant's Motion.

## I.    Background

### A.    Evidentiary Issues

Defendant objects on various grounds to multiple exhibits Plaintiff filed in opposition to the Motion. *See* ECF No. 88. First, Defendant argues that the Court should strike the declarations of Plaintiff's purported experts Dr. Steven Businger ("Businger"), ECF No. 86-1, and Jack Hareland ("Hareland"), ECF No. 86-4, because Plaintiff failed to provide expert reports where the declarations include previously undisclosed opinions, *see* ECF No. 88 at 1–2.

District courts have the discretion to bar a party from relying on late-disclosed expert testimony at summary judgment. *See Wong v. Regents of the*

*Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005).  A party may not be allowed to use undisclosed information or a witness "to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Defendant has since moved to exclude both Businger and Hareland as expert witnesses.  *See* ECF No. 95.  In light of Defendant's Motion to exclude various experts, and Plaintiff's motion to compel production of discovery, ECF No. 93, the Court ordered the parties to file their positions on whether and to what extent those pending motions affected the instant Motion.  ECF No. 96.  In its response, Defendant argued that its motion to exclude the experts had no bearing on this Motion because Plaintiff does not rely on the expert reports in his opposition, instead citing two declarations that Defendant addressed in its reply brief on this Motion.  *See* ECF No. 99 at 4.  Nevertheless, Defendant invited the Court to review the expert reports attached to its motion to exclude if the Court thought it may be helpful.

Businger is a meteorologist who conducted a forensic analysis of the meteorology surrounding the incident in this case.  *See* ECF No. 86-1 at 1.  He concluded that the estimated position of the aircraft placed it "in the middle of an area of highly active thunderstorms associated with a kona low.  The location of the kona low and its squall lines were forecast and indicated on the Prognostic

3

Chart issued by NWS Aviation Weather Center at 00 UTC on 15 November 2017." *Id.* at 2–3 (citation omitted).  He continued that such weather patterns "are known to be associated with enhanced turbulence." *Id.* at 3.  Businger then opined that diverting the aircraft and adding twenty to thirty minutes to the flight would have avoided the incident. *Id.* at 4.

A comparison of Businger's report, ECF No. 95-7, and his declaration, ECF No. 86-1, reveals significant overlap between the two documents such that Defendant's contention that the declaration contains new opinions is unpersuasive. The Court thus OVERRULES Defendant's objection to the Businger declaration at this stage but will consider it for only limited purposes to avoid ruling on the merits of Defendant's pending motion to strike.

As to Hareland, his purported declaration is a puzzling document.  Hareland is apparently a pilot and was a "flight operation duty manager" for a major airline, a position involving various aspects of flight planning. *See* ECF No. 86-4 at 1–2. But the declaration is unsigned and confusing.  It seems to be a review of Defendant's policies and a commentary of Defendant's declarants. *See generally id.*  Similarly, Hareland's expert report, submitted with Defendant's motion to exclude, is more a list of questions than a report on what happened. *See* ECF No. 95-6.  Still, the report provides some context for Hareland's opinion as to what may have caused the incident at issue in this case. *See id.* at 10 (reviewing a

meteorological chart and opining that route must have been motivated by fuel savings only, not safety of the flight).  Whether the declaration includes undisclosed opinions is moot considering that the Court sustains Defendant's objection to it.

Defendant also argues that the Court should strike Hareland's declaration because it is unsigned and, thus, inadmissible.  *See* ECF No. 88 at 4.  Defendant cites *Schertzer v. Bank of America, N.A.*, Case No. 19cv264 JM(MSB), 2022 U.S. Dist. LEXIS 62741, at *16, 2022 WL 1004559, at *6 (S.D. Cal. Apr. 4, 2022), for the premise that an unsworn declaration cannot create a triable issue at summary judgment.  *See* ECF No. 88 at 4.  At the hearing, the Court asked Plaintiff to explain the formatting of the purported declaration and the lack of signature.  Plaintiff's counsel stated that his copy of the declaration included Hareland's signature.  As such, the Court ordered Plaintiff's counsel to file a complete copy of Hareland's declaration, including the signature page by noon that day.  *See* ECF No. 104.  Plaintiff's counsel filed a one-page document that provides no context and — considering the Court's order and counsel's representation during the hearing — glaringly *failed to include a signature*.  *See* ECF No. 103.  If anything, the filed document raises further questions about the validity of the purported Hareland declaration.  Because Plaintiff failed (twice) to provide a signed copy of

the Hareland declaration, the Court hereby SUSTAINS Defendant's objection to

the document and the Court will not rely on it in this Order.

As to Plaintiff's Exhibit C, ECF No. 86-3, Defendant argues it is

inadmissible because it:

> (a) lacks foundation, competency and personal knowledge under Fed. R. Evid. 602, (b) is inherently unreliable and misleading under Fed. R. Evid. 403, and (c) contains inadmissible hearsay, without any exception, under Fed. R. Evid. 802 since there is no evidence who drafted or submitted the purported statements of the Hawaiian Airlines flight crew, the flight crew were never deposed, and the flight crew did not provide any sworn statements regarding the contents of the purported statements.

ECF No. 88 at 13–14 (footnote omitted).  Plaintiff's Exhibit C appears to be a

collection of incident reports from the flight attendants and other employees on the

flight in question.  At the hearing, Plaintiff's counsel explained that the document

was indeed reports from members of the flight crew.  The Court OVERRULES the

objections to Exhibit C.

Plaintiff's apparent objection to Defendant's use of expert opinion evidence

at the summary judgment phase, *see* ECF No. 85 at 12–13, is contrary to law.

"Expert opinion is admissible and may defeat summary judgment if it appears the

affiant is competent to give an expert opinion and the factual basis for the opinion

is stated in the affidavit[.]"  *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir.

1985).

B.    **Facts**

Unless otherwise noted, the following facts are undisputed.  The most salient facts for the purposes of this Motion are relatively straightforward, but the parties disagree about many of the details and the various causes of events.

Plaintiff and his spouse were passengers on a Hawaiian Airlines flight from Osaka, Japan to Honolulu, Hawaiʻi.  *See* ECF No. 80 ¶ 1; ECF No. 86 ¶ 1.  During the flight, the captain turned the seatbelt sign on and the crew made an announcement in English and Japanese that passengers should fasten their seatbelts.  *See* ECF No. 80 ¶¶ 17–18; ECF No. 86 ¶¶ 17–18; ECF No. 79-8 at 4–5.  Plaintiff testified that he was on his way back to his seat from the bathroom when he heard the announcement.  *See* ECF No. 79-8 at 4–5.  He claims that it took him a long time, perhaps as long as four to five minutes, to return to his seat because the plane was wobbling.  *Id.* at 5–6.  Once he sat down, he struggled to fasten his seatbelt, but thought he eventually succeeded.  *Id.*  He had not; Plaintiff's seatbelt was not fastened.  *Id.*; *see* ECF No. 80 ¶ 19.  The flight then encountered turbulence, which caused Plaintiff to be ejected from his seat.  *See* ECF No. 80 ¶ 24; ECF No. 79-5 at 2.  Plaintiff flew from his seat, hit his head on the ceiling, and came crashing to the floor.  *See* ECF No. 79-8 at 6; ECF No. 79-13 at 4; ECF No. 86-3 at 5.  Five other passengers were "affected" by the turbulence.  *See* ECF No. 80 ¶ 19.  Multiple passengers suffered injuries from the incident.  *See* ECF No. 86-

3 at 5.  And the plane suffered damage to some of the ceiling panels.  *See id.* at 5, 11.  There is also a suggestion that a flight attendant was near Plaintiff's seat when the plane encountered turbulence and that the flight attendant also hit the ceiling.  *See* ECF No. 85 at 8 (citing ECF No. 86-3 at bates stamp HAL 00018).[1]

## C.   Procedural History

Plaintiff filed suit on November 12, 2019.  *See* ECF No. 1.  He alleged two counts:  Count I for Negligence and Count II for Strict Liability (Montreal Convention).  *See id.*

On April 8, 2022, Defendant filed its Motion.  *See* ECF No. 79.  Plaintiff filed an opposition, *see* ECF No. 85, and Defendant filed a reply, *see* ECF No. 87.  In response to a request from Plaintiff's counsel, the Court continued the hearing on the Motion to July 1, 2022.  ECF No. 91.

Since the submission of the Motion, Plaintiff filed a motion to compel Defendant to produce certain documents allegedly withheld during discovery.  *See* ECF No. 93 at 2.  Defendant meanwhile moved to exclude several of Plaintiff's proposed expert witnesses.  *See* ECF No. 95.  Plaintiff's motion to compel was denied, ECF Nos. 110 and 113, while Defendant's motion to exclude remains pending.

---

[1]  Plaintiff did not include bates stamp "HAL 00018" in Exhibit C, but Defendant does not dispute the proximity of an attendant.

## II.   Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's

9

evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more

10

persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

## III.    Discussion

### A.    Overview Of The Montreal Convention

"The Montreal Convention is the successor to the Warsaw Convention of 1929." *Narayanan*, 747 F.3d at 1127 n.2 (citing Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11). The Warsaw Convention, drafted during the infancy of the airline industry, sought in part to establish uniformity regarding the law applicable to claims arising out of international air travel. *See Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 779 (7th Cir. 2008); *see also El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169–70 (1999). Although the Montreal Convention replaced the Warsaw Convention, it adopted many of the same substantive provisions. *See Narayanan*, 747 F.3d at 1127 n.2. As such, courts rely on Warsaw Convention precedent in Montreal Convention cases when the relevant provisions are functionally the same. *See Phifer v. Icelandair*, 652 F.3d 1222, 1223 n.1 (9th Cir. 2011). Thus, the Montreal Convention now "governs all international carriage of persons, baggage or cargo

performed by aircraft for reward, and provides the exclusive remedy for international passengers seeking damages against airlines." *Armstrong v. Hawaiian Airlines, Inc.*, 416 F. Supp. 3d 1030, 1039 (D. Haw. 2019) (internal quotation marks and citation omitted).

Under Article 17(1) of the Montreal Convention, an air "carrier is liable for damage sustained in case of death or bodily injury of a passenger *upon condition only* that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1), 1999 WL 33292734, at *33 (emphasis added).  As such, this is not precisely a strict liability regime because the passenger must prove, for example, that an "accident" occurred, but the Montreal Convention does not require that the carrier act negligently in order for an event to constitute an accident. *See Air France v. Saks*, 470 U.S. 392, 407 (1985); *Mansour v. British Airways PLC*, CASE NO. 2:18-cv-01757-BJR, 2020 WL 1847750, at *3 (W.D. Wash. Apr. 13, 2020) ("Thus, Article 17(1) creates a form of strict liability against carriers[.]" (citation omitted)).

Nevertheless, any negligence on the part of the carrier is relevant to the liability limitation provision of the Montreal Convention.  Article 21(2)(a) limits a

carrier's liability to 100,000 Special Drawing Rights[2] if the carrier can prove that any damages to the passenger were "not due to the negligence or other wrongful act or omission of the carrier or its servants or agents."  Montreal Convention art. 21, 1999 WL 33292734, at *35.

Similarly, the Montreal Convention affords a defense for air carriers that considers whether the claimant was negligent.  Article 20 provides:

> If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation . . . the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

*Id.* art. 20, 1999 WL 33292734, at *34.

//

//

//

---

[2] "The Special Drawing Right is an international reserve asset created by the International Monetary Fund ('IMF') that can be exchanged for the currencies of IMF members."  *Armstrong*, 416 F. Supp. 3d at 1040 n.10 (citation omitted).  The maximum amount of Special Drawing Rights under Article 21 has increased to 128,821.  *See* Montreal Convention art. 24, 1999 WL 33292734, at *21 (requiring review by the ICAO of Special Drawing Rights limits every five years); 2019 Revised Limits of Liability Under the Montreal Convention of 1999, ICAO, https://www.icao.int/secretariat/legal/Pages/2019_Revised_Limits_of_Liability_U nder_the_Montreal_Convention_1999.aspx (last visited Aug. 24, 2022); *see also* Inflation Adjustments to Liability Limits Governed by the Montreal Convention, 85 Fed. Reg. 3104, 3104–05 (Jan. 17, 2020).  Plaintiff asserts that this converts to about $175,000.

**B.** **A Factual Issue Exists As To Whether An Accident Caused Plaintiff's Injuries**

Defendant argues that it is entitled to summary judgment because the incident at issue was not an "accident" under the Montreal Convention and thus does not fall within the purview of Article 17.

The Supreme Court has defined "accident" for the purposes of Article 17 as "an unexpected or unusual event or happening that is external to the passenger." *Saks*, 470 U.S. at 405. "[I]t is the *cause* of the injury that must satisfy the definition rather than the occurrence of the injury alone" because "American jurisprudence has long recognized this distinction between an accident that is the *cause* of an injury and an injury that is itself an accident." *Id.* at 399. Of course, "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Id.* at 406. "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405 (citation omitted). "In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Id.* (citations omitted).

Defendant challenges Plaintiff's right to recovery pursuant to Article 17 on three grounds: (1) that turbulence preceded by a warning to the passengers to fasten their seatbelts is not "unusual or unexpected"; (2) that Plaintiff's injuries can

only be attributed to his internal reaction — his failure to fasten his seatbelt — rather than any external event; and (3) that even if an accident occurred, it did not cause Plaintiff's injuries.  *See* ECF No. 79-2 at 21–27.

### 1.   Unexpected Or Unusual Event

Defendant's general contention that "there is nothing objectively unusual or unexpected about turbulence that is preceded by a warning," falls flat when applied to the uncontroverted facts of this case.  ECF No. 79-2 at 22.  Taking Defendant's contention to its logical end, Defendant is in effect suggesting that turbulence strong enough to injure multiple passengers and damage the plane is par for the course on its flights.  The Court concludes that Defendant has failed to prove as a matter of law that the turbulence that occurred on the flight in question was not unusual or unexpected.  A reasonable factfinder could conclude that the turbulence was unusually strong or unexpected.

Only a handful of cases have addressed whether turbulence on a flight is unexpected or unusual under the Montreal Convention.  Defendant cited to none. But Plaintiff's citations and the Court's research demonstrate that those courts that have examined the issue mostly conclude that, as a matter of law, turbulence is not exempt from the definition of accident.  Rather, courts examine the circumstances to determine whether the specific occurrence of turbulence that a plane encounters is unexpected or unusual.  For example, the Second Circuit rejected a bright-line

rule whereby light or moderate turbulence would never constitute an accident, but severe or extreme turbulence would. *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 164–66 (2d Cir. 2003) ("In sum, the trial court erroneously concluded as a matter of law that turbulence that is 'light' or 'moderate' according to FAA guidelines may never constitute an 'accident' for purposes of liability under Article 17 of the Warsaw Convention."). Instead, the court reviewed the record, concluded that there was a factual dispute not only about the severity of the turbulence that the flight encountered, but also "the . . . prevalence . . . of a particular weather event in any given circumstances, and to what degree it might be 'beyond the normal and preferred mode of operation for the flight,'" *id.* at 164 (internal quotation marks and citation omitted), and reversed the district court's grant of summary judgment. *See id.* at 166. Further, the court admonished the district court for crediting the pilot's characterization of the turbulence over Plaintiff's and Plaintiff's expert's descriptions. *Id.* Other cases examining the issue are consistent with *Magan*. *See Palma v. Am. Airlines, Inc.*, No. 09–23212–CIV, 2010 WL 5140592, at *4 (S.D. Fla. 2010) (holding that whether a bout of turbulence constitutes an accident is a matter for the factfinder); *Brunk v. British Airways PLC.*, 195 F. Supp. 2d 130, 132–33 (D.D.C. 2002) (denying summary judgment to defendant where reasonable jury could conclude that plaintiff suffered injury from a "jolt of turbulence substantial enough to cause her to leave her feet

and to fall to the floor of the airplane"); *McCune v. Spantax, S.A. Transportes Aereos*, 66 F.R.D. 619, 620–21 (S.D.N.Y. 1975) (denying summary judgment where plaintiff presented evidence that the plane encountered severe turbulence and plaintiff "was thrown to the ceiling of the plane and then thrown violently to the floor").

Here, the Court concludes that whether the turbulence the flight experienced was unexpected or unusual is a question for a factfinder. First, it is undisputed that Plaintiff was ejected from his seat and then fell to the floor during the turbulence. *See* ECF No. 86 ¶ 24. Such fact alone suggests a degree of turbulence greater than that experienced during most flights. Second, some of the flight attendants onboard characterized the turbulence as "severe" in their incident reports. *See, e.g.*, ECF No. 86-3 at 2. Defendant does not dispute the level of turbulence. *See* ECF No. 87 at 11. In fact, the turbulence injured multiple passengers and damaged the aircraft. *See* ECF No. 80 ¶ 19; ECF No. 86-3 at 2. The Court will not say as a matter of law at this stage of the proceedings that such occurrences are within the normal, usual, or expected course of air travel.

Further, Defendant's arguments to the contrary are unavailing. First, Defendant argues that courts determine whether an incident constitutes an accident by evaluating whether the airline followed its own procedures, industry standards, and/or the law. *See* ECF No. 79-2 at 21; *see also id.* at 19–20 (collecting cases).

But Defendant's argument is somewhat contradictory, and its support for the premise inapposite.  Out of one side of its mouth, Defendant posits that "[t]he focus of the 'accident' inquiry is on the 'event' which caused the injury, not the reasonableness of the airline's conduct."  *Id.* at 18–19 (citation omitted).  Out of the other side of its mouth, however, Defendant contends that Plaintiff's injuries did not result from an accident because "the flight was operated in compliance with Hawaiian Airlines' rules and procedures, consistent with the prevailing industry practices, and in accordance with the standard of care prescribed under the [Federal Aviation Regulations (the "FARs")]."  *Id.* at 23.  Whether that is true or not, the argument is better suited to the comparative negligence and damages limitations inquiries under Articles 20 and 21 of the Montreal Convention.  Regardless, some courts have examined prevailing practices to assess whether an accident occurred, but the circumstances of those cases render them inapposite.

The cases Defendant cites for the premise that courts examine whether an airline violated its own policies or industry standards do not address situations where a plane experienced turbulence.  Rather, they tend to examine situations where a passenger develops a health condition during the course of a flight.  They also do not stand for the principle that if an airline follows its own procedures, then an accident cannot occur as a matter of law.  For example, in *Rodriguez v. Ansett Australia Ltd.*, the Ninth Circuit held that a passenger's development of deep vein

thrombosis ("DVT") was not an accident in part because the plane "was operating under normal conditions," *and* because there was no evidence that the airline's failure to warn about DVT violated any policy. *Rodriguez v. Ansett Australia Ltd.*, 383 F.3d 914, 917–19 (9th Cir. 2004). Defendant also cites *Nguyen v. Korean Air Lines Co.*, ECF No. 79-2 at 19, in which the Fifth Circuit affirmed summary judgment for an airline where a passenger who fell down an escalator after deplaning had failed to demonstrate that the airline had violated its own policies or industry standards regarding wheelchair passengers. *See Nguyen v. Korean Air Lines Co.*, 807 F.3d 133, 138 (5th Cir. 2015). But in that case, the court simply held that the airline's lack of someone who spoke the passenger's native language and failure to ensure that she ended up in a wheelchair did not constitute accidents under the applicable Convention. *See id.* at 138–39.

The facts of those cases are far afield from those here. Here, there is evidence that the operation of the plane was anything but "normal." Whether Defendant complied with various regulations and policies may inform whether it acted negligently, but the Court concludes that the turbulence Plaintiff experienced here at least raises a factual question regarding whether something unusual or unexpected occurred.

Defendant also argues that courts examine a passenger's conduct in assessing whether an accident occurred. *See* ECF No. 79-2 at 20–21. Again, none

of those cases involve a situation like the one here where the plane suddenly jolted, injuring multiple passengers.  For example, the passengers in the cases Defendant cites suffered injuries from:  (1) having a foot stepped on by a flight attendant during an altercation and then being handcuffed after refusing to leave the plane voluntarily after being ordered off by the captain, *see Grimes v. Nw. Airlines, Inc.*, Case No. CIV. A. 98-CV-4794, 1999 WL 562244, at *1 (E.D. Pa. July 30, 1999); (2) twisting a knee when sitting down to avoid the reclined seat in the row in front of the passenger, *see Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 883 (5th Cir. 1996); (3) being punched, handcuffed, placed in a chokehold, and pushed down stairs by immigration officials after refusing to leave the plane, *see Cush v. BWIA Int'l Airways Ltd.*, 175 F. Supp. 2d 483, 488 (E.D.N.Y. 2001); and (4) trying to avoid another passenger while lifting a bag into an overhead bin, *see Gotz v. Delta Air Lines, Inc.*, 12 F. Supp. 2d 199, 204–05 (D. Mass. 1998).  Here, Plaintiff was returning to his seat after using the restroom when the fasten seatbelt sign illuminated.  At his seat, he tried to fasten his seatbelt to comply with the crew's announcement but failed to do so.  The Court concludes that the effect, if any, of Plaintiff's failure to fasten his seatbelt is a matter for the factfinder and, again, more relevant to causation and whether Plaintiff acted negligently.  It does not speak to whether something unusual or unexpected happened during the flight.

20

## 2.    External To Plaintiff

Article 17 of the Montreal Convention applies when an unexpected or unusual event is "external" to the passenger; it does not apply "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Saks*, 470 U.S. at 406. Defendant characterizes Plaintiff's failure to fasten his seatbelt as an internal reaction to the turbulence, and thus outside the scope of the Montreal Convention. The Court finds Defendant's argument clearly flawed. It is undisputed that the aircraft experienced turbulence strong enough that it lifted Plaintiff out of his seat and caused him to hit the ceiling of the plane. The record also demonstrates that five other passengers were "affected" by the turbulence and suffered injuries. *See* ECF No. 80 ¶ 19. The plane itself suffered damage from the incident. *See* ECF No. 86-3 at 3. It is obvious that *something* external to Plaintiff occurred, and that there is a factual dispute about whether the operation of the aircraft was "usual, normal, and expected."

Defendant's framing of the issue conflates the requirement that an event be "external" to constitute an accident with the causation analysis (which the Court addresses below). Defendant contends that "Plaintiff's injuries can only be attributed to his own internal reaction, and not to an external event as required to establish an 'accident.'" ECF No. 79-2 at 22. But, as explained in *Saks*, "[a]ny

21

injury is the product of a chain of causes, and we require only that the passenger be able to prove that *some link* in the chain was an unusual or unexpected event external to the passenger." *Saks*, 470 U.S. at 406 (emphasis added).  In *Olympic Airways v. Husain*, the Supreme Court rejected an airline's argument that the fact that a passenger had remained in his assigned seat near the smoking section before suffering a fatal asthma attack, removed the incident from the Warsaw Convention's definition of accident.  *See Olympic Airways v. Husain*, 540 U.S. 644, 653–55 (2004).  The Supreme Court reasoned that the airline's focus "neglects the reality that there are often multiple interrelated factual events that combine to cause any given injury," and "that the flight attendant's refusal on three separate occasions to move [the passenger] was also a factual event," that was "a link in the chain of causes that led to [the passenger's] death." *Id.* at 653–54 (internal quotation marks and citations omitted).  In other words, the flight attendant's refusals constituted events external to the passenger. *See also Lynn v. United Airlines, Inc.*, Case No. 15-cv-7041, 2017 WL 4357387, at *2–3 (N.D. Ill. Oct. 2, 2017) (noting that the popping open of an overhead bin was undisputedly an external event and that passenger's internal decision to stand up to close it did not remove the incident from the definition of accident).

Here, like the flight attendant's refusal in *Olympic Airways*, the Court concludes that the turbulence is an external event and is one of the links in the

chain of causes that led to Plaintiff's injury.  Thus, because there is a factual

dispute about to what extent the turbulence was unexpected or unusual, the Court

concludes that there is a triable issue on whether an accident occurred.

### 3.    Causation

"The Ninth Circuit applies proximate cause analysis in order to determine

whether an accident cause[d] a plaintiff's injury under the Montreal Convention."

*Armstrong*, 416 F. Supp. 3d at 1048 (citations omitted).  Still, at summary

judgment, there need only be evidence from which a reasonable jury may conclude

that the accident was a "link in the chain" of causes of the passenger's injury.  *See*

*id.* (quoting *Saks*, 470 U.S. at 406).  And, "[i]n light of *Saks* and *Husain*, whether a

qualifying 'unexpected' event sufficiently contributes to a passenger's injuries

within the meaning of Article 17(1) remains a fact-intensive inquiry."  *Lynn*, 2017

WL 4357387, at *4.

Defendant argues that Plaintiff's failure to fasten his seatbelt breaks the

chain of causation such that Defendant is entitled to summary judgment.  *See* ECF

No. 79-2 at 24–26.  At least one court has explicitly rejected this same argument.

In *Quevedo v. Iberia Lineas Aereas de España, Sociedad Anónima Operadora Co.*,

a district court denied summary judgment to an airline that had argued that the

passenger's "failure to secure her seatbelt severed the chain of causation, meaning

her injuries were not caused by the turbulence as a matter of law."  *Quevedo v.*

*Iberia Lineas Aereas de España, Sociedad Anónima Operadora Co.*, Civil Action No. 17-21168-Civ-Scola, 2018 WL 4776754, at *4 (S.D. Fla. Oct. 3, 2018) (citation omitted).  The court reasoned that the passenger's failure to fasten her seatbelt was one link in the chain that caused her injury, but that the severe turbulence was another link, and that apportioning the responsibility was "an issue of comparative negligence appropriately addressed through [the airline's] affirmative defenses under Articles 20 of the Montreal Convention."  *Id.* (citations omitted).  The Court agrees with the reasoning in *Quevedo* and concludes that Defendant has failed to prove as a matter of law that the turbulence Plaintiff experienced was not a proximate cause of his injuries.

Further, there is evidence in the record that calls into question Plaintiff's culpability for failing to fasten his seatbelt.  Reading the record in the light most favorable to Plaintiff, there may have been extenuating circumstances that affected his ability to do so.  Plaintiff testified that he heard the seatbelt announcement when he was on his way back to his seat from the restroom.  *See* ECF No. 79-8 at 5.  He also stated that it took four or five minutes (or a long time) to walk the twenty or thirty meters because the plane was wobbling and he had to hold onto the headrests of the seats.  *Id.* at 5–6.  It is reasonable to infer that it was a tense situation for Plaintiff, as evidenced by his wife's admonishment to buckle up as soon as he arrived at his seat.  *See* ECF No. 79-9 at 8.  Once he sat down, he

struggled to fasten his seatbelt, and thought he had, but within ten seconds of that, the turbulence occurred that caused him to fly from his seat.  *See* ECF No. 79-8 at 6.  Defendant does not dispute that a flight attendant was nearby; at this stage, it is reasonable to infer that he or she may have been able to ensure that Plaintiff had successfully fastened his seatbelt but did not.  ECF No. 85 at 8.  A jury could conclude from the foregoing circumstances that Plaintiff's failure to fasten his seatbelt did not sever the chain of causation between the turbulence and Plaintiff's injury.

**C.      There Is A Factual Dispute As To Whether Plaintiff Was Negligent And, If So, To What Extent That Negligence Caused Plaintiff's Injuries**

Defendant argues in the alternative that even if there is a triable issue on whether it is liable under Article 17, it is entitled to full exoneration under Article 20 because Plaintiff's failure to fasten his seatbelt was negligent and caused his injuries.  *See* ECF No.  79-2 at 26–27.

As mentioned above, Article 20 of the Montreal Convention reads:

> If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

Montreal Convention art. 20, 1999 WL 33292734, at *34.  The Warsaw Convention included similar language in its Article 21:  "If the carrier proves that

25

the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability." *Kwon v. Singapore Airlines*, 356 F. Supp. 2d 1041, 1047 (N.D. Cal. 2003) (internal quotation marks omitted).  And, "[n]egligence under Article 21 [of the Warsaw Convention] is in the nature of comparative negligence, rather than a traditional contributory negligence standard." *Id.* (citing *Husain v. Olympic Airways*, 116 F. Supp. 2d 1121, 1141 (N.D. Cal. 2000), *aff'd*, 316 F.3d 829 (9th Cir. 2002), *aff'd*, 540 U.S. 644) (other citation omitted); *see also Eichler v. Lufthansa German Airlines*, 794 F. Supp. 127, 130 (S.D.N.Y 1992) (applying federal common law of comparative negligence to claim under the Warsaw Convention).

Plaintiff argues, ECF No. 85 at 24, and Defendant does not dispute that Hawaiʻi negligence principles govern the analysis, *see* ECF No. 109 at 2–3.  As such, exoneration under Article 20 of the Montreal Convention is based on Hawaiʻi comparative negligence principles.  Under Hawaiʻi law, a plaintiff's negligence does not bar recovery "if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought."  Hawaiʻi Revised Statutes § 663-31(a). The Article's language that the negligence of the claimant may "wholly or *partly*

26

exonerate[]" a carrier suggests as much.  *See* Montreal Convention art. 20, 1999 WL 33292734, at *34 (emphasis added).

As discussed above there is evidence that disputes whether and to what extent Plaintiff was negligent in failing to fasten his seatbelt.  *See supra* Part III. B.3.  And even assuming without deciding that Plaintiff was negligent, the question of whether Plaintiff's negligence was the sole or the greater cause of his injuries is for the factfinder.  *See Palma*, 2010 WL 5140592, at *4.  The Court thus DENIES Defendant's Motion as to exoneration under Article 20.

**D.      Article 21(2) — Limitation of Liability**

Defendant argues that even if an accident caused Plaintiff's injuries, it is entitled to limit its liability because Plaintiff has not proffered any evidence that Defendant was negligent.  *See* ECF No. 79-2 at 27.  Specifically, Defendant contends that the Federal Aviation Act ("FAA"), which enacted the FARs, preempts any other laws that relate to the standard of care pertaining to aviation safety.  *See id.* at 27–28.  Based on that preemption, Defendant asserts that it cannot be negligent because Plaintiff has failed to identify any specific FAR that Defendant violated.  *Id.* at 31.  In support, Defendant cites cases in which plaintiffs bring negligence actions and district courts grant dispositive motions in favor of airlines because the plaintiff fails to allege and prove a violation of an FAR.  *See*

*id.* at 30.  None of the cases Defendant cites are brought pursuant to the Montreal Convention, but Plaintiff does not challenge that the FARs govern.

Defendant, however, appears to reverse the burden by arguing that Plaintiff must prove negligence.  *See* ECF No. 79-2 at 29–32.  Under the Montreal Convention, carriers are responsible for injuries caused by an accident.  A carrier can then its liability if *it* "proves that:  (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) such damage was solely due to the negligence or other wrongful act or omission of a third party."  Montreal Convention art. 21(2), 1999 WL 33292734, at *35.  Defendant thus bears the burden to prove it is entitled to the liability limitation.

Regardless, the FARs are relevant to the negligence analysis, and Defendant at least puts forth some evidence that it complied with the regulations.  The Ninth Circuit has held that federal law preempts state law as to aviation safety.  "The FAA, together with [the FARs], establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, states."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007).  In a recent unpublished decision, the Ninth Circuit affirmed the use of the FARs as the standard of care in a case involving a domestic flight where the passenger asserted negligence and state-law common carrier

28

liability claims.  *See Kropp v. United Airlines, Inc.*, No. 21-55960, 2022 WL 2156109 (9th Cir. June 15, 2022).  The court explained that the district court applied the proper "careless or reckless standard" from 14 C.F.R. § 91.13(a) and that the plaintiff "failed to establish *either* a genuine issue of material fact as to whether [any specific] FAR was violated in connection with [the flight], *or* as to whether [the flight] was operated in a 'careless or reckless manner.'"  *See id.* at *1 (quoting *Montalvo*, 508 F.3d at 472) (emphases added).  Thus, although the Defendant fails to direct the Court to any case applying the FAA standards to the Montreal Convention negligence analysis, the Court will assume without deciding that the FARs set forth the relevant standard of care.  *Cf. Lee v. Air Canada*, 228 F. Supp. 3d 302, 311–12 (S.D.N.Y. 2017) (declining to decide whether the FAA or common law standards of negligence governed passenger's Montreal Convention claim).

The FARs "include a general federal standard of care for aircraft operators, requiring that 'no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.'"  *Montalvo*, 508 F.3d at 472 (quoting 14 C.F.R. § 91.13(a) (2003)).  In what Defendant describes as the seminal case on FAA preemption, the Third Circuit Court of Appeals explained:

> Thus, in determining the standards of care in an aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircraft may not be operated in a careless or reckless manner.  The applicable

> standard of care is not limited to a particular regulation of a
> specific area; it expands to encompass the issue of whether the
> overall operation or conduct in question was careless or reckless.
> Moreover, when a jury is determining what constitutes careless
> or reckless operation of an aircraft, expert testimony on various
> aspects of aircraft safety may be helpful to the jury.   In the
> present case, for example, the regulations on the use of seat belts
> and on the illumination of the "fasten seat belt" sign set the
> standard for determining both whether American operated the
> aircraft carelessly or recklessly and whether the passengers, who
> had not fastened their seatbelts, were contributorily negligent.  In
> addition, expert testimony may help the jury to understand
> whether the way in which warnings of turbulence and/or
> illumination of seatbelt signs were conveyed to the passengers
> constituted careless or reckless operation.

*Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 371–72 (3d Cir. 1999) (footnote

omitted).  From this, it appears that courts consider both specific regulations

relating to various aspects of aircraft operation and the more-generalized "careless

or reckless manner" standard of care.  *See Kropp*, 2022 WL 2156109, at *1.

Plaintiff's theories of negligence are somewhat obscure.  The Businger

declaration suggests that Plaintiff takes issue with Defendant's failure to avoid the

known area of bad weather.  Businger declared that his professional opinion was

"that the subject flight was not operated in a safe manner, given clear evidence in

satellite, radar, and lightning data of active thunderstorms in the chosen path of the

flight route."  ECF No. 86-1 at 4–5.  His opinion was based, among other things,

on the fact that the pilot chose not to deviate from the flight plan despite "radar

returns [that] showed echos [sic] from heavy rain that nearly reached to the flight

level," and that "choosing a flight route that passes through squall lines of active thunderstorms whose tops neared the flight level at the time of the accident, was not consistent with best practices." *Id.* at 4.

Plaintiff also argues, albeit in discussing whether he could be held negligent, that there is a genuine dispute as to whether the seatbelt sign was illuminated with sufficient time for Plaintiff and the other injured passengers to effectively fasten their seatbelts. *See* ECF No. 85 at 25.[3]  For example, the turbulence may have occurred "shortly" after the announcement and while the crew was in the middle of checking whether the passengers were compliant.  *See* ECF No. 86-3 at 3, 5. Further, Plaintiff may have been in the aisle for five minutes trying to get back to his seat.

The Court concludes that there is a triable issue as to Defendant's negligence.  On the one hand, Defendant proffered evidence that it did not violate any FAR regarding the route or the operation of the flight, *see* ECF No. 79-3 at 3–5, and Plaintiff has not directed the Court to any specific FARs that Defendant violated.  On the other, Article 21(2) places the burden on Defendant to disprove negligence, and the Court finds there is a factual dispute as to whether Defendant operated the aircraft in a "careless or reckless manner."  First as to the flight route, the Court notes that it will not rely on Businger's testimony regarding how weather

---

[3]  Plaintiff's counsel confirmed such theory at the hearing on the Motion.

may affect an airplane.  With the pending motion to exclude his testimony, it is

unclear at this point whether Businger is qualified to testify to flight plan and

possible effects of a storm on a plane.  However, there is no dispute that Businger

is a certified meteorologist, *see* ECF No. 86-1 at 1; *see also* ECF No. 95-1 at 26,

such that his testimony about the weather itself is proper to consider for the

Motion.  Businger declared that the flight passed directly over a highly active

"kona low" that had squall lines of deep convection.  In simple terms, the plane

flew over an active storm.  The Court thinks it reasonable for a factfinder to infer

carelessness if Defendant navigated the plane directly into (or above) a strong

weather pattern.  Common sense dictates that bad weather leads to bumpy flights.

Defendant, of course, may (and does) put forth evidence that it operated the flight

in a reasonably safe manner, but the Court concludes that Defendant has not

foreclosed a finding of negligence at this stage.  Whether Defendant could have

avoided the rough air — or even whether it was required to avoid the stormy area

— is a matter for the factfinder.

Similarly, the Count finds a factual dispute as to whether the seatbelt sign

was illuminated in time.  That some flight attendants were up and about in the

cabin still doing their compliance checks could suggest that the turbulence

occurred in close succession with the announcement.  Alternatively, if Plaintiff was

in the aisle trying to make his way back to his seat for *five minutes* after the

announcement, the fact that no flight attendant helped him or ensured that his seatbelt was fastened could give rise to an inference of carelessness or recklessness under the FARs.

Thus, the Court denies Defendant's Motion as to its limitation of liability claim under Article 21(2) of the Montreal Convention.

## IV.    Conclusion

For the foregoing reasons, the Court DENIES the Motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, August 24, 2022.



Jill A. Otake
United States District Judge

---

CIV. NO. 19-00617 JAO-KJM; *Furuta v. Hawaiian Airlines, Inc.*; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT